Argued February 10, decided March 3, 1914.

## BALLIS *v.* NORTHERN BREWERY CO.

(139 Pac. 326.)

**Landlord and Tenant—Rent—Right to Terminate Lease.**

1. A lessee covenanted not to make any unlawful, improper or offensive use of the premises, and it was agreed that, if the sale of liquors on the premises became unlawful because of refusal of a license for the place, the lease should terminate at the option of the lessee. The lease provided that it should bind the successors and assigns of the parties. A subtenant was granted a license to sell

liquors, which was revoked for violation of a city ordinance. The authorities refused to grant a new license to other parties for the place. *Held,* that the lessee had the right to terminate the lease, not being responsible for the act of the subtenant in violating the ordinance.

**Landlord and Tenant—Lease—Construction of Covenant.**

2. Covenants for the forfeiture of leased premises are construed strictly against a forfeiture.

From Multnomah: HENRY E. McGINN, Judge.

This is an action by William Ballis and Bertha B. Ballis against the Northern Brewery Company, a corporation, in the nature of special *assumpsit.* From a judgment in favor of the defendant, plaintiffs appeal.

AFFIRMED.

For appellants there was a brief over the names of *Mr. H. B. Beckett* and *Messrs. Wilbur & Spencer,* with an oral argument by *Mr. Beckett.*

For respondent there was a brief over the name of *Messrs. Stapleton & Sleight,* with an oral argument by *Mr. R. Sleight.*

Department 1.   MR. JUSTICE BURNETT delivered the opinion of the court.

This is an action upon a written lease to recover $600, alleged to be due for four months' rent of a building in the City of Vancouver, Washington. On the 7th day of March, 1911, the plaintiffs leased to defendant a three-story brick building, and the land upon which it stands in Vancouver, Washington, for the term of five years, for a monthly rental of $150, to be paid in advance on the 1st day of each month, said term beginning on the 1st day of April, 1911. The defendant entered into possession of said premises on April 1, 1911, and the rents were paid until August 1, 1912. This action was brought to recover the rents

falling due for the months of August, September, October and November, 1912.

The defendant is an Ohio corporation, but authorized to transact business in the State of Oregon and Washington. The defendant is engaged at Vancouver, Washington, in the manufacture and sale of malt and fermented liquors, which it sells at wholesale, but not at retail. Under the laws of the State of Washington, applicable to said City of Vancouver, the defendant could not engage in the retail liquor business, and it leased said building with the intention of subletting it to someone that would carry on the retail liquor business therein.

The defendant covenanted in and by said lease that, *"it will not make any unlawful, improper, or offensive use of said premises."* In fact, that provision is stated *twice* in said lease. Said lease contained the following clause, which has an important bearing:

"It is further expressly hereby agreed by and between the parties hereto, that in case at any time during the lifetime of this lease, it shall be unlawful to sell or dispose of intoxicating liquors, in said premises, by reason of the city or county authorities refusing to grant a license for said place, or on account of the enforcement of what is known as the 'local option law,' then, and in any such event, this lease shall immediately terminate at the option of said lessee."

The defendant, by its answer, denied that there was $600 or any part thereof owing from it to the plaintiffs. It admitted the execution of said lease, and that the rent of said premises had been paid to August 1, 1912. The defendant sublet said premises, with the consent of the plaintiffs, to Estebennet & McLeod, to operate a retail liquor store therein.

On the 5th day of October, 1911, the city of Vancouver issued to said Estebennet & McLeod a license, authorizing them to sell intoxicating liquors at retail in

said premises for the period of one year.   Said license was so granted upon the *express condition,* that said licensees should not keep said place open or sell any malt, fermented or spirituous liquors, on the first day of the week commonly called Sunday, or permit or allow any woman or girl to be employed to dance, sing or solicit treats in, or to draw customers for the bar within said place of business or saloon, or to be kept in or about the same for the purpose of prostitution, or to solicit prostitution, etc.   Said license provided, also, that the right of the city to revoke said license, at any time, for a violation of any one of the conditions stated *supra* was expressly reserved.

Said Estebennet & McLeod operated said retail liquor store in said premises, under said license, until June 2, 1912.   On June 2, 1912, the chief of police of the City of Vancouver sent to the mayor and council thereof a written communication signed by him, the body of which is as follows:

"To the Honorable Mayor and City Council:

"I hereby recommend to your honorable body that you revoke the retail liquor license now held by Estebennet & Hink, known as the Bungalow Bar, at No. 403 Main Street, as they have repeatedly violated the ordinances regulating the sale of liquor on Sunday. Would be glad to give you any further information you desire.          Respectfully yours,

"JOHN T. SECRIST,
"Chief of Police."

At a meeting of the council held on the 3d day of June, 1912, said council considered said communication from the chief of police, and, by a unanimous vote of said counsel, revoked the license to keep a retail liquor store in said leased premises; said Bungalow Bar, at No. 403 Main Street, referred to in said communication of the chief of police, being the saloon conducted in said leased building.

Thereafter the defendant took possession of said leased premises, and sublet them to N. W. Fisher, on condition that he should be able to obtain a license to sell liquor there or obtain a license to sell elsewhere, and be permitted to transfer it, so as to be allowed to sell liquors at retail on the leased premises; but the council refused to grant him a license to sell liquors on the leased premises, or to allow him to transfer another license, so as to permit the running of a saloon there. Thereafter the defendant arranged with H. E. Hobart to sublet said demised premises to him for the purpose of operating a saloon there, and said Hobart made application to the council of said city for a license to conduct a retail liquor store in said demised premises under the hotel provisions of an ordinance of said city, providing for granting a liquor license to hotels operating 50 rooms. The council rejected said application.

Upon the refusal of the council to grant a license for conducting a liquor saloon on the demised premises, the defendant, under the clause of said lease, set out *supra,* for terminating said lease, notified the plaintiffs of its election to terminate said lease, because it was unlawful to sell or dispose of intoxicating liquors on said premises, by reason of the fact that said city refused to grant a license to sell such liquors there, and for that reason the defendant elected to terminate said lease, and refused to pay any rent for said premises thereafter.

1. If the defendant had a right to terminate said lease, the plaintiffs have no right of action, and hence the question for decision is: Did the defendant have a right to terminate said lease? The court below found, as a fact, that the defendant sublet said demised premises to Estebennet & McLeod.

The defendant, as lessee, expressly covenanted by said lease that "*it will not make any unlawful, improper or offensive use of said premises.*" It is evident that, if the defendant, instead of subletting the demised premises to Estebennet & McLeod, had itself obtained a license for a saloon on said premises, and had then violated the conditions upon which said license was granted, as its sublessees did, resulting in a revocation of said license for keeping open such saloon on Sundays, and selling intoxicating liquors therein in violation of the law, the defendant would not have had a right to terminate said lease, because of the revocation of said license, and the subsequent refusal of the city to grant a license for a saloon on the demised premises. The defendant expressly covenanted that it would make no unlawful use of said premises, and it was its bounden duty to keep this covenant inviolate, and it is a well-settled principle of law that one cannot take advantage of his own wrong: *Brown* v. *Rasin M. Co.,* 98 Md. 1 (55 Atl. 391) ; *Brown* v. *Cairns,* 63 Kan. 584 (66 Pac. 639) ; *Phillips* v. *Moor,* 71 Me. 84; *Williamson* v. *Williamson,* 71 Me. 446; *Forsythe* v. *Martin,* 3 La. Ann. 514, 516.

In *Brown* v. *Cairns,* 63 Kan. 584 (66 Pac. 639), the facts were that a lease contained the following clause: "If the said parties of the second part (the lessees), their executors or administrators, at any time during the term hereby granted shall fail, in any or either of the covenants or conditions or promises in these presents contained, which on the behalf of said parties of the second part are or ought to be observed, performed, fulfilled or kept, then this agreement shall terminate and be at an end." The defendants in error, the lessees, failed to pay the rent, which they had covenanted to pay, and claimed that such failure on

their part terminated the lease. In other words, they claimed that they could insist that said lease was terminated by their failure to do their duty under the contract. However, the court, passing on that condition, says:

"The defendants in error could not, by a failure to pay the rent, bring the lease to an end. The provision that the agreement should terminate on the failure of the lessees to perform those conditions of the lease which were obligatory to be carried out on their part is a covenant in favor of the lessors exclusively, and does not make the lease void, except at *their* option. To hold otherwise would permit a lessee to take advantage of his own default. The law is well settled on this point."

If the lessee had had the liquor license, and it had been forfeited for its misconduct, it could not, in an action to recover the rent, defeat a recovery, by pleading and proving such forfeiture, which was caused by its own default.

In its fourth finding of fact, the court below states that the defendant *sublet* the demised premises for saloon purposes to Estebennet & McLeod, and that said sublessees obtained a license to carry on a retail liquor store therein, and that said premises were occupied by Estebennet & McLeod as sublessees of the defendant until June 2, 1912, and that on June 3, 1912, the council of the city of Vancouver revoked said license for the reason that said sublessees had violated an ordinance of said city, regulating the sale of liquors on Sunday, etc. It appears also, by the finding of the court, that said city thereafter refused to grant a license for the sale of liquors at retail on said premises, and that the sale of liquors on said premises during any part of the four months for which the plaintiffs seek to recover rent was unlawful, and that it was unlawful because said city refused to grant a

license for such sale. Said lease contained the following clause: "It is further agreed by and between the parties hereto, that all of the terms, conditions and covenants of this lease shall be binding upon the heirs, successors and assigns, administrators and personal representatives of said lessor and said lessee."

Independently of said clause, the lessee's covenant that "it would not make any unlawful, improper or offensive use of said premises," would, according to the decision of the Supreme Court of Massachusetts, in *Wheeler* v. *Earle,* 5 Cush. 31 (51 Am. Dec. 41), run with the land, and bind its sublessees, but there are decisions to the contrary: See 1 Tiffany, Landlord & Tenant, p. 810.

Assuming, without deciding, that the obligation not to make any unlawful use of the premises passed to the sublessees of the defendant, it does not follow that said sublessees were the agents of the defendant, or that their misconduct can be imputed to the defendant. If the lessees' subtenants were its agents in selling said liquors on Sundays, their acts were its act, for what one does by another he does himself. *"Qui facit per alium facit per se."* It will be noticed that the defendant covenanted that *it* would not make any unlawful use of the demised premises. It did not covenant that its *assigns* or *subtenants* would not do so, nor did it covenant that *it would not permit* any unlawful use to be made of said premises. It appears to have covenanted *for itself alone.*

In volume 1 of Tiffany, Landlord & Tenant, pages 908, 910, the author says:

"Though a covenant by the lessee to use premises, or not to use them in a particular way, is binding on the *assignee,* and renders him liable in damages in case it is violated by him, neither the lessee nor his assignee is liable, as for a breach of such covenant, because a *subtenant* uses the premises in a way not in accord

with such covenant, and this has been decided to be the case, even though the covenant is expressly made binding on 'assigns,' *subtenants* not being 'assigns.' "

In *Granite Building Corp.* v. *Greene,* 25 R. I. 593–595 (57 Atl. 651), the court says:

"We have no doubt that the covenant, such as it is, runs with the land, and binds the assignees of the lease as well as the original lessees. The covenant expressly binds the 'assigns' of the lessee as well as 'themselves,' and when the assign was accepted as tenant under the lease he came into privity with the lessors, and assumed all the covenants which the lessee had made on his behalf. * * The plaintiff argues that the assignee, by permitting his *subtenant* to carry on a retail liquor saloon on the leased premises, *is a participator in the selling* and *therefore a seller himself,* and thereby violates the covenants in the lease. The cases which he cites do not support the proposition. * * The courts have generally *construed conditions in leases with great exactness, the parties being held to the meaning of the words they have selected to express their obligations.* * * Thus, if a right of re-entry is not expressly given, breach of a condition will not work a forfeiture: Citing *Burns* v. *McCubbin,* 3 Kan. 231 [87 Am. Dec. 468], and other cases. In this latter case the lease provided for a right of re-entry on breach of certain specified conditions, and provided that the lessee should not assign, but did not provide for re-entry upon breach of this condition. It was held that by assigning the lease the lessee did not incur a forfeiture. * * We conclude, therefore, that the construction upon which the plaintiff's whole case is based must fail, and, hence, that the defendant has not forfeited his lease."

In *Doe* v. *Goodwin,* 4 Maule & S. 265, Lord Ellenborough says:

"I believe the safest rule for the construction of these instruments (leases) is to construe them according to the letter, unless we can see a decisive reason for departing from it."

In *Burns* v. *McCubbin,* 3 Kan. 225, 226 (87 Am. Dec. 468), the court says:

"We are not disposed to favor this doctrine of implication, and more especially when applied to those cases where parties have entered into written contracts with express conditions. The rule is that, 'when parties have entered into written engagements with express stipulations, it is manifestly not desirable to extend them by implication; the presumption is that, having expressed *some* they have expressed *all* the conditions by which they intend to be bound under that instrument.' "

In *Wilson* v. *Twamley,* 2 K. B. Division of the Court of Appeals (1904), 99, the syllabus is as follows:

"A lease of a public house contained a covenant *by the lessee* for himself, *his heirs, executors, administrators, and assigns,* that he would use the premises as a public house or beerhouse only, and would carry on or suffer on the premises no other trade, business, or manufacture during the term, without the consent of the lessor, and that he would not do, or suffer to be done, on the premises any act whereby the licenses might be forfeited or indorsed, or the renewal of them withheld. The lease of the premises having been assigned to the defendant, he underlet them to an *underlessee,* who was convicted of an offense against the licensing laws, by reason of which the renewal of the license was refused. In an action by the plaintiff, as assignee of the reversion, against the defendant as assignee of the lease, for breach of the above-mentioned covenant, held that, the *sublessee* not being *the servant or agent of the defendant,* the latter could not be said to have done or suffered to be done the act by reason of which the license was not renewed, and therefore the action was not maintainable."

In *Bryant* v. *Hancock & Co.,* 1 Q. B. Division for 1898, page 716, the syllabus is:

"The lessee of a public house covenanted with the lessor, the plaintiff, that he, his executors, adminis-

trators, or assigns would not willfully do or suffer any act or thing which might be a breach of the rules and regulations established by law for the conducting of licensed public houses, or be a reasonable ground for the withholding or withdrawing of all or any of the licenses for the sale of beer and ale, wine and spirituous liquors therein. The lessee assigned the term to the defendants, *who underlet* the premises. The *underlessee* committed an offense against the licensing laws, the result of which was that the renewal of the license was refused. Held, that the term 'assigns' in the covenant did not include an *underlessee, and that the defendants were not liable for a breach of the covenant in respect of the offense committed by their underlessees.*"

1 McAdam, Landlord & Tenant, page 396, states the rule as to the construction of conditions for forfeiture of leases thus:

"Conditions providing for disabilities and forfeitures are to receive, when the intent is doubtful, a strict construction against those for whose benefit they are introduced."

In 18 Am. & Eng. Ency. of Law (2 ed.), page 371, the rule for construction of covenants of forfeiture clauses of leases is stated thus:

"Forfeiture clauses are not favored in either law or equity, *and their effect will be limited by a strict construction;* and the effect of a forfeiture or power of re-entry has often been restricted and allowed to operate only with regard to a part of the covenants or stipulations in the lease. The construction of a forfeiture clause should not, however, be so strict as to override the manifest intention of the parties which is fairly expressed, etc."

The fourth finding of fact by the court below states that the defendant sublet the demised premises to Estebennet & McLeod, who obtained the license that was forfeited as stated, *supra.* This finding is not objected to, and it stands as a special verdict of a jury.

Therefore, we are bound to assume as a fact that the holders of said license were the *sublessees* of the defendant, the lessee.   There was no privity of estate between the plaintiff, the lessor, and the subtenants of the lessees, and these subtenants are neither the *servants* nor *the agents* of the defendant.   The acts of said subtenants, by which they caused the forfeiture of the license for a saloon on the demised premises, were not the *acts of the defendant,* the lessee.   The defendant was not responsible for their misconduct, and there is nothing to show that they violated the city law *with the connivance of the defendant.*

2. The defendant covenanted only that it would not make any unlawful use of the demised premises.   It did not covenant even against its assigns.   There is nothing in the lease to manifest an intention to make the defendant responsible for the acts of its *subtenants.* Covenants for the forfeiture of leased premises are construed strictly *against* a forfeiture.   Courts follow the letter of such covenants, unless there is something in the lease to indicate that such a construction was not intended by the parties.   By this lease the defendant did not covenant that it would not *permit* an unlawful use of the demised premises.   Its covenant is confined to its own acts.   The last covenant of the lease provides that all of its terms, conditions and covenants shall be binding upon the *heirs, successors, assigns, administrators, and personal representatives* of the lessors and lessee, but these terms do not include the *sublessees* of the lessee, and they do not make the acts of the subtenants of the defendant the acts of defendant, or make the defendant responsible for the criminal acts of said subtenants, so as to preclude its terminating said lease because said city revoked said license for the wrongful acts of said subtenants.

Under the terms of the lease, we hold that the defendant had the right to terminate said lease for the reason that it became unlawful on June 3, 1912, and thereafter to sell intoxicating liquors at retail on the demised premises, because the city authorities refused to grant a license authorizing such sale on said premises.

We find no error in the proceedings of the court below.

The judgment of the court below is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE, and MR. JUSTICE BURNETT concur.